```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```
----------------------------------------X

LOREN DAWSON,

                    *Plaintiff/Petitioner*

    -against-

THE CITY OF NEW YORK, KINGS COUNTY
DISTRICT ATTORNEYS OFFICE and NATALIE
C. RIETHER, Individually, Assistant
District Attorney,

                    *Defendants.*

**MEMORANDUM AND ORDER**

22-CV-4784(KAM)(PK)

----------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

      Plaintiff Loren Dawson ("Plaintiff") commenced the instant action pursuant to 42 U.S.C. § 1983 and § 1988, alleging that the City of New York (the "City"), Kings County District Attorney's Office ("the District Attorney's Office"), and Assistant District Attorney Natalie C. Riether (together, "Defendants") violated his Fourth, Sixth, and Fourteenth Amendment rights during his criminal trial in New York state court.[1]  (*See* ECF No. 16, Amended Complaint ("Am. Compl.") at 1.)

---

[1] Plaintiff's amended complaint asserts violations of his "First, Fourth, Fifth, Eighth, and Fourteenth Amendment" rights.  (ECF No. 16, at 1.)  The amended complaint, however, does not provide factual allegations in support of, nor assert causes of action pursuant to, the First, Fifth, or Eighth Amendments. (*See id.*).  As detailed below, the Court construes Plaintiff's amended complaint as alleging violations of the Fourth, Sixth, and Fourteenth Amendments, and Plaintiff's First, Fifth, and Eighth Amendment claims are dismissed for failure to state a claim.

1

Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 21, Motion to Dismiss.) For the reasons set forth below, Defendants' motion is **GRANTED**.

## BACKGROUND

For the purpose of deciding Defendants' Rule 12(b)(6) motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in Plaintiff's favor. *See Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021). The Court may also consider "matters of which judicial notice may be taken," including judicial records, if relied upon "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such . . . filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) ("The practice of taking judicial notice of public documents is not new.").

### I. Factual Background

On May 5, 2017, Plaintiff was found guilty after a jury trial of attempted first-degree assault, second-degree assault, and fourth-degree criminal possession of a weapon, for an incident that occurred outside of a Brooklyn restaurant on May 6, 2016. (ECF No. 16, Am. Compl. at 2.) At trial, it was established that "the defendant swung a knife at the complainant, causing a number of lacerations, including a 12-centimeter laceration on the

2

complainant's neck." *People v. Dawson*, 178 A.D.3d 719, 719 (2d Dept 2019). On December 4, 2019, the New York Appellate Division, Second Department, vacated Plaintiff's conviction, finding that "the prosecutor repeatedly engaged in improper conduct" such that Plaintiff had been "deprived [of his right to] a fair trial." *Id.* at 720, 721.

In his amended complaint, Plaintiff alleges that Defendant Riether engaged in significant misconduct during the trial. (ECF No. 16, Am. Compl. at 3.)  This included allegedly calling Plaintiff's self-defense claim "ridiculous," "insulting," and "ludicrous," and informing the jury that Plaintiff would "tell [them] anything" in order to "sell [them]" a story. (*Id.* at 2.) Plaintiff also alleges that Defendant Riether "impinged on [Plaintiff's] right to remain silent" by arguing to the jury that Plaintiff could not have acted in self-defense during the altercation because he did not call 911. (*Id.* at 3.) Additionally, Plaintiff alleges that Riether referred to Plaintiff as a "punk" and "hothead" that "could not take a beating." (*Id.*) Plaintiff also alleges that Riether bolstered the credibility of state witnesses and "interjected her own sense of moral retribution" about Plaintiff. (*Id.*)  Furthermore, Plaintiff maintains that Riether improperly instructed the jury on erroneous use of force standards and failed to inform jurors that they should not make decisions based on sympathy. (*Id.*)

3

Plaintiff further alleges that Defendant Riether's acts were carried out "pursuant to policies and practices of the City" and "were engaged in with the full knowledge, consent, and under the supervisory authority of the [District Attorney's Office]." (*Id.* at 4-5.) Plaintiff contends that the City and the District Attorney's Office consciously designed trainings, policies, and practices that encouraged misconduct from prosecutors and denied defendants a fair trial.[2] (*Id.* at 3.) Plaintiff alleges that Riether's conduct was a result of the District Attorney's Office's "*de facto* policies" that encouraged "engaging in malicious prosecutions and the [violation of] constitutional rights of defendants." (*Id.* at 10.) He alleges that the policies encouraged the following violations: (a) "knowingly presenting false and/or prejudicial testimony and arguments at criminal proceedings;" (b) "knowingly and intentionally misleading juries at criminal proceedings;" and (c) "interfering with the constitutional right to a fair trial." (*Id.*) Moreover, Plaintiff alleges that the City had knowledge of these policies through "numerous credible allegations, many substantiated by judicial decisions" and that the District Attorney's Office was "on notice" that the City could be "held civilly liable for its failure to adequately train,

---

[2] These statements present legal conclusions, rather than factual statements; the Court need not accept legal conclusions as true for purposes of considering whether a complaint states a claim. The Court sets forth these statements herein to provide full context.

4

supervise, or discipline prosecutors regarding their constitutional requirements and related due process obligations." (*Id.* at 13-14.) Plaintiff alleges that, despite this knowledge, the City did nothing to correct the policies. (*Id.* at 14.)

Based on the above factual allegations, Plaintiff asserts a Fourth Amendment malicious prosecution claim, a Fourteenth Amendment due process claim, a Sixth Amendment right to a fair trial claim, a failure to intervene claim "as guaranteed by the Fourth and Fourteenth Amendments," supervisory liability, and municipal liability.[3] (*Id.* at 6-10.)

## II. Procedural History

Plaintiff filed the original complaint on August 15, 2022, pursuant to § 1983 and § 1988. (ECF No. 1, Complaint, at 1.) On September 7, 2022, Defendants requested a pre motion conference regarding their anticipated motion to dismiss. (ECF No. 12, Motion for Pre-Motion Conference, at 1.)

During the pre-motion conference this Court granted Plaintiff leave to amend his complaint. (09/16/2022 Minute Entry.) Plaintiff filed the amended complaint on October 4, 2022. (ECF No. 16, Am. Compl.) In the operative amended complaint, Plaintiff

---

[3] The amended complaint states that Plaintiff's second cause of action is for "deprivation of liberty without due process of law and denial of a fair trial by committing prosecutorial misconduct." (ECF No. 16, Am. Compl. at 7-8.) The Court construes these statements as asserting violations under the Fourth and Sixth Amendments.

5

requests $10,000,000 in compensatory and punitive damages and attorney's fees.  (*Id.* at 1, 16.)

Defendants moved to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and the motion to dismiss was fully briefed on February 21, 2023.  (*See* Def. Br.; Pl. Br.; ECF Nos. 21, Motion to Dismiss; 26, Reply Memorandum of Law in Support of Motion to Dismiss ("Reply Br.").)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.* (internal quotation marks and citation omitted).

## DISCUSSION

### I.   Claims Against the District Attorney's Office

The District Attorney's Office is not an entity capable of being sued*.  See, e.g., Michels v. Greenwood Lake Police Dep't*,

6

387 F.Supp.2d 361, 367 (S.D.N.Y. 2005) (finding district attorney's office to be non-suable entity); *Crooks v. City of New York*, 110 N.Y.S.3d 898 (N.Y. Sup. Ct. 2018), *aff'd as modified on other grounds*, 136 N.Y.S.3d 158 (2d Dep't 2020) (same). The capacity of an entity such as the District Attorney's Office to be sued is determined by New York law. Fed. R. Civ. P. 17(b). Under New York law, "the office of the district attorney is not a legal entity distinct from the district attorney himself." *Bryan v. New York*, No. 14-CV-8305 (NSR), 2015 WL 4272054, at *3 (S.D.N.Y. July 13, 2015) (quoting *Sash v. City of New York*, No. 05-cv-1544 (DAB) (JCF), 2006 WL 2474874, at *4 (S.D.N.Y. Aug. 11, 2006)). Moreover, any claim against the District Attorney's Office would likely be barred by the Eleventh Amendment, because New York district attorneys "represent[] the State not the county." *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988); *see also Walker v. City of New York*, 205 F.3d 1327 (2d Cir. 2000) (affirming district court dismissal of claims against district attorney's office on Eleventh Amendment grounds).[4] Accordingly, Plaintiff's claims against the District Attorney's Office are dismissed.

---

[4] The Second Circuit has noted in a summary order that the Eleventh Amendment does not apply to bar lawsuits against a district attorney in his or her official capacity where the suit centers "on the administration of the district attorney's office—that is, on the 'office policy'" that the district attorney sets. *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (summary order) (citation omitted). Here, however, Plaintiff did not file a lawsuit against the Kings County District Attorney as a policymaker. Plaintiff alleges claims against Defendant Riether, an assistant district attorney, in her capacity as a prosecutor, from which she is immune, as the Court explains in detail below. Plaintiff also alleges claims against the District Attorney's

## II. Prosecutorial Immunity

"Absolute immunity bars a civil suit against a prosecutor for advocatory conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012). "[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery." *Deronette v. City of New York*, No. 05-CV-5275 (SJ), 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007). This is because "an absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13 (1976) (internal quotation marks and alterations omitted).

In determining whether a prosecutor has absolute immunity, courts apply a "functional approach," which examines the function being performed by a defendant-prosecutor rather than his or her position. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). Not all actions taken by a prosecutor are shielded by absolute immunity, and where a prosecutor "functions outside his or her role as an advocate for the [government], the shield of immunity is absent." *Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995). Nevertheless, the immunity is generally broad and extends to any

---

Office, but as noted above, under New York law, "the office of the district attorney is not a legal entity distinct from the district attorney himself," and thus is not an entity capable of being sued. *Bryan*, 2015 WL 4272054.

8

"acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [her] role as an advocate for the [government]." *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) (quoting *Buckley,* 509 U.S. 259 at 273); *see Giraldo*, 694 F.3d at 165 (finding that prosecutorial immunity attached to "conduct in court"); *see also D'Alessandro v. City of New York*, 713 F. App'x 1, 6 (2d Cir. 2017) (summary order) (citation omitted) (finding that the prosecutor's alleged actions—such as manufacturing evidence and delaying production of the grand jury minutes—were done in preparation of trial and therefore protected by absolute immunity); *see also Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006) (finding that Plaintiff's claims against prosecutors, "including fabricating evidence used at trial, withholding exculpatory evidence, suborning perjury, and attempting to intimidate him into accepting a guilty plea," were foreclosed by absolute prosecutorial immunity).

Indeed, absolute immunity applies to protect a prosecutor even in the face of allegations of malicious or corrupt intent, so long as the prosecutor acted within a covered function. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (holding that prosecutorial immunity is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate"); *see also Burns v. Reed*, 500 U.S. 478,

9

487-88 (1991) (finding that prosecutor's act of presenting evidence was protected by absolute immunity and allegations that the prosecutor had "deliberately misled the court" were irrelevant).

Here, all of Plaintiff's allegations against Defendant Riether concern Riether's presentation of evidence before the jury in Plaintiff's criminal trial. (*See* Am. Compl. at 2-3.) Plaintiff alleges that he was denied his right to a fair trial because Riether "knowingly made false, defamatory and inflammatory statements and intentionally mislead[sic] the [j]ury." (*Id.* at 4.) Although these alleged actions — if true — are very concerning, it is well-established that presenting evidence to a jury is within the prosecutor's role as an advocate for the government. *Anilao v. Spota*, 774 F. Supp. 2d 457, 479 (E.D.N.Y 2011)(finding that prosecutors acted in their role as advocates even in the alleged act of presenting false evidence); *Hill*, 45 F.3d at 661 ("[C]onspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury . . . are clearly protected by the doctrine of absolute immunity as all are part of his function as an advocate."). Because Riether was acting within her role as a prosecutor, absolute immunity applies to shield her from Plaintiff's claims.

Plaintiff contends that Riether acted with "malice" and "knowingly" and "intentionally" engaged in misconduct. (ECF No.

10

16, Am. Compl. at 4.)  But because this Court finds that Riether was acting in the role of an advocate, her subjective motivations are legally irrelevant. *Tapp v. Champagne*, 164 F. App'x 106, 108 (2d Cir. 2006) (summary order) ("Although [plaintiff] asserts that the charged prosecutors . . . conspired to prosecute him maliciously . . . his pleadings, even when viewed in the light most favorable to him, are insufficient to pierce the absolute immunity that shields a prosecutor's decision to initiate and pursue criminal charges." (citing *Bernard*, 356 F.3d at 503)). "[A]s long as a prosecutor acts with colorable authority, absolute immunity shields [her] performance of advocative functions regardless of motivation." *Bernard*, 356 F.3d at 498.

Accordingly, the Court grants Defendants' motion to dismiss as to Plaintiff's claims against Defendant Riether.

### III. *Monell* Liability

To sustain a claim for relief under Section 1983 against a municipal defendant, a plaintiff must demonstrate: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."[5] *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020); *see also Monell*

---

[5] Plaintiffs need not bring a successful suit against an individual actor for a municipal defendant to be liable under *Monell*. *Askins*, 727 F.3d at 253 ("It does not follow . . . that the plaintiff must obtain a *judgment* against the individual tortfeasors in order to establish the liability of the municipality."). Thus, the Court's finding of absolute immunity for Riether does not impact the determination of liability for the City.

11

*v. Department of Social Services*, 436 U.S. 658, 690-91 (1978); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* . . . *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.").

Plaintiff alleges a series of broad and conclusory statements devoid of supporting facts in his claim for municipal liability. (*See generally* ECF No. 16, Am. Compl.)  Plaintiff alleges generally that the City knew that the District Attorney's Office had "*de facto* policies and/or well-settled and widespread customs and practices . . . to prosecute persons through inflammatory statements, intentionally bolstering the credibility of State's witnesses, intentionally misleading the jury, improperly invoking the jury's sympathies, and to substantially interfere with the accused's right to a fair trial by impermissible means and other abuses of authority."  (*Id.* at 5.)  Plaintiff, however, alleges the existence of these *de facto* policies without citing to any supporting materials, such as "procedural manuals or training guides," or pointing to "particular aspects" of the City's "training or supervision" that would support this allegation of *de facto* policies.  *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 540 (S.D.N.Y. 2012).  Because Plaintiff does not support his allegations with any specific facts, instances, statistics, or

12

other factual allegations connecting the alleged policy or custom and the alleged deprivation of Plaintiff's rights, these allegations do not rise above the speculative level and do not state a plausible claim for relief. *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555) (finding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'").

In his opposition to the instant motion, Plaintiff argues that his allegations establish four avenues of municipal liability: "1) a policy existed within the [District Attorney's Office] via a deliberate indifference to repeated constitutional violations; (2) individuals in that office such as Defendant Riether were responsible for causing constitutional violations such as those suffered by the plaintiff; (3) the policy was widespread as it has occurred in many other prosecutions by the DA's office, while never being punished; and (4) subordinates were trained to commit these acts and do whatever necessary to obtain convictions as evident by the numerous occurrences and lack of instances in which those committing these violations faced any discipline." (ECF No. 25, Plaintiff's Affirmation in Opposition to Dismiss ("Pl. Opp.") at 4-5.)

As discussed above, however, none of Plaintiff's allegations *in the complaint* specify a particular policy that encouraged these

13

alleged violations, a policymaker who authorized them, specific examples of the "repeated constitutional violations," training practices or materials that furthered these alleged policies, or specific instances where the alleged conduct occurred without discipline. (*Id.; see generally* ECF No. 16, Am. Compl.) The amended complaint's conclusory allegations that the District Attorney's Office "encourage[d] malicious prosecutions" and "[took] no remedial action in cases where such wrongdoing was discovered," (ECF No. 16, Am. Compl. at 11), do not satisfy Plaintiff's burden to state a plausible municipal liability claim because they are insufficient to allege "an affirmative link between the municipality's policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 809 (1985).

Alternatively, Plaintiff contends that a *Monell* claim is also possible under the theory of "deliberative indifference to constitutional violations of subordinates." (ECF No. 25, Pl. Opp. at 5); *see Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." (citation omitted)). To prove "deliberate indifference," a plaintiff must show that there was an "obvious need" for more or better supervision to protect against constitutional violations. *Vann*, 72 F.3d at 1049. This "obvious

14

need" can be demonstrated "through proof of repeated complaints of civil rights violations," and through a lack of meaningful investigation into the complaints. *Id.; see, e.g., Fiacco v. City of Rensselaer,* 783 F.2d 319, 328 (2d Cir. 1986) ("[W]hether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers had used excessive force.")

To establish deliberate indifference, Plaintiff argues that the current Kings County District Attorney, Eric Gonzalez, recently asked state courts to overturn 378 convictions, due to "improper conduct of the police department and the [District Attorney's Office]." (ECF No. 25, Pl. Opp. at 6.) Plaintiff also cites six cases in which convictions were reversed, "specifically for [the District Attorney's Office's] attorneys' misconduct in their summation." *Id.* Plaintiff first raises these cases in his opposition to the motion to dismiss, however, and Plaintiff makes no mention of the names or case numbers of these or other cases in the amended complaint.[6] (*See* ECF No. 16, Am. Compl. at 12.)

---

[6] Additionally, although Plaintiff provides six cases of "attorney misconduct" and "malicious prosecution," he does not provide any factual context for the cases to support his claims. (*See* ECF No. 25, Pl. Opp. at 6-7.) Much of the alleged conduct in the provided cases is distinct from the alleged actions of Defendant Riether. *See People v. Casiano,* 148 A.D.3d 1044, 1044 (2d Dep't 2017) (finding that the evidence was legally insufficient to establish defendant's guilt); *People v. Soto*, 72 Misc. 3d 1153 (N.Y. Crim. Ct. 2021) (finding that prosecution had failed to comply with the CPL §§245.20(1)(p), 245.20(1)(k)(iv), and 245.50 discovery requirements); *People v. Rowley,* 127 A.D.3d 884, 885 (2d Dep't 2015) (finding that the prosecutor not only made improper remarks but also "improperly functioned as an unsworn witness" when she cross-examined the defendant); *People v. Cotton*, 242 A.D.2d 638, 638 (2d Dep't 1997) (finding that

15

Therefore, the Court will not consider these cases as part of Plaintiff's factual allegations. *See O'Brien v. National Property Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.")  Accordingly, Plaintiff has failed to plausibly allege the City's "deliberate indifference" to constitutional violations by pleading sufficient facts to establish *Monell* liability.

Even accepting as true all factual allegations in the amended complaint and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff cannot sustain a municipal liability claim against the City.  Accordingly, Plaintiff's claims against the City are dismissed.

## CONCLUSION

For the forgoing reasons, Defendants' Rule 12(b)(6) motion to dismiss is **granted**. The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED**
Dated:   August 3, 2023
         Brooklyn, New York

**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

---

a new trial was needed because the prosecutor "advanced a theory premised on a fact that he knew to be false.").